UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CYNTHIA FINCHER,                              :
                                              :
                          Plaintiff,          :        06 Civ. 9959 (WHP)
                                              :
          -against-                           :        MEMORANDUM AND ORDER
                                              :
THE DEPOSITORY TRUST AND                      :
CLEARING CORPORATION,                         :
                                              :
                          Defendant.          :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

          Plaintiff Cynthia Fincher ("Fincher") brings this employment discrimination

action against Defendant The Depository Trust and Clearing Corporation ("DTCC"), alleging

violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"), New York State Executive Law § 296, and the

New York City Admin. Code § 8-502.  DTCC moves for summary judgment.  For the following

reasons, DTCC's motion is granted.


                                    BACKGROUND

          The following facts are undisputed.[1]  Fincher, an African-American female, was

employed by DTCC from February 2001 to June 2006.  (Defendant's Rule 56.1 Statement dated

Feb. 22, 2008 ("Defs. 56.1 Stmt.") ¶ 11.)  Fincher was a project manager in the International Tax

_____

[1] Although Fincher failed to file a statement in compliance with Local Rule 56.1, this Court has
considered all the evidence in the record.

Department until DTCC phased out that position in October 2004.  (Defs. 56.1 Stmt. ¶¶ 13, 21.)

Fincher then became a Senior Auditor in the Financial/Operations Division of the Audit

Department.  (Defs. 56.1 Stmt. ¶¶ 12-13.)

I. Training

      Between October 2004 and May 2006, Fincher attended several training courses

required for all auditors in her department.  DTCC also gave Fincher an audit manual and

Fincher received guidance and assistance from co-workers.  (Defs. 56.1 Stmt. ¶¶ 31-32.)

      Fincher testified that three white co-workers – Mary Fuentes, Eugenia Shraga,

and Elina Linderman – received training that was not offered to her.  (Declaration of Stephen

Mitchell dated Apr. 22, 2008 Ex. A: Transcript of the Deposition of Cynthia Fincher, dated Oct.

17, 2007 ("Fincher Tr.") at 54-55, 243.)  While Fincher specifically testified that DTCC sent

Linderman to New York to receive training, she could not provide specific dates or descriptions

for that course or any other training she claims her white co-workers received.  (Fincher Tr. at

246-48).  Fincher also testified that Fuentes worked with an experienced manager for her first

assignment, while "[Fincher] was given a consultant" who "was not an employee of DTCC,

[and] didn't really know their auditing procedures."  (Fincher Tr. at 245.)  However, Fincher

provided no further details regarding Fuentes's first assignment, her own first assignment, or

whether she asked for a DTCC employee to support her.  (Fincher Tr. at 245-46.)

II. Performance Appraisals

      In January 2006, Fincher received a performance appraisal in which she was rated

as "Requires Improvement" under the "Overall Values and Competencies" rating and

2

"Unacceptable" for the "Overall Goals" rating (the "2005 Performance Appraisal"). (Defs. 56.1 Stmt. ¶ 34.) During a discussion in early January 2006 with Meriam Murphy-Jones, vice president of auditing, and Mark Hudson, senior manager of internal audit ("Hudson"), regarding the 2005 Performance Appraisal, Fincher stated that she "wasn't comfortable with . . . some of the process with the auditing work" and that she needed more training. (Defs. 56.1 Stmt. ¶¶ 39-40.) Fincher did not complain to Human Resources or allege any discrimination. (Defs. 56.1 Stmt. ¶¶ 40, 43, 82.) Because of the 2005 Performance Appraisal, Fincher did not receive a salary increase or bonus. (Defs. 56.1 Stmt. ¶¶ 41, 56-57.) She was not alone in that regard because other auditors, including Caucasians and Asian-Americans, were also denied salary increases or bonuses because of their performance appraisals. (Defs. 56.1 Stmt. ¶ 58.)

In 2006, DTCC created a new grade level for senior auditors, requiring a "Fully Competent" rating or better for an auditor to be eligible for an upgrade to the new level. (Defs. 56.1 Stmt. ¶ 60, 62.) DTCC upgraded Caucasian and African-American auditors who received "Fully Competent" ratings or better, but did not upgrade Fincher, another African-American and two Caucasian auditors who received ratings of "Requires Improvement" or "Unacceptable." (Defs. 56.1 Stmt. ¶¶ 61, 63-65.)

On March 23, 2006, DTCC issued a written performance warning to Fincher, stating that Fincher had "[c]ontinued difficulty in completing low-complexity testing within allotted timeframes" and that "[e]xcessive hours were expended and significant rework was needed to perform and complete testing relating to follow-up recommendations." (Defs. 56.1 Stmt. ¶ 44.) Fincher did not respond to the written warning or complain about discrimination. (Defs. 56.1 Stmt. ¶ 45.) On June 5, 2006, Fincher resigned. (Defs. 56.1 Stmt. ¶ 74.)

3

III.  Complaints of Discrimination

   The parties dispute whether Fincher made a complaint of discrimination to Charles Smith, senior director of employee relations, in March 2006.  According to Smith, Fincher commented to him in the building lobby, "if you are [w]hite they hold your hand and if you are [b]lack they don't."  (Defs. 56.1 Stmt. ¶ 85.)  Smith asserts that he did not consider that off-hand remark to be a complaint of discrimination and therefore did not conduct an investigation.  (Defs. 56.1 Stmt. ¶¶ 86-87.)

   Fincher asserts that she told Smith that "black people were set up to fail at this department because they were not provided and given the same training opportunities as the white employees," and that Smith promise to pass along her comment to his manager, Anthony Portannese.  (Fincher Tr. at 202, 274.)  Fincher testified that she asked Smith a month later whether he had discussed the issue with Portannese and Smith "stated that Anthony Portannese wasn't going to do anything or say anything.  He didn't say anything about it, so the matter wasn't going to be addressed."  (Fincher Tr. at 274-75.)  Smith denies making any such comment.

   Fincher also testified that Hudson told her in May 2006 that he believed Fincher had been subjected to discrimination and that he had informed Elizabeth Baez, senior human resources generalist, of the discrimination.  (Fincher Tr. at 124-27.)  Fincher testified that Hudson also said that Fincher had not received proper training, and he was forced to give her a negative evaluation.  In addition, Fincher testified that Hudson asked her if she knew about DTCC's discrimination against another employee, Herb Fray.  (Finder Tr. at 244.)  Hudson

4

denies that he made any of these statements. (Affidavit of Mark Hudson dated Feb. 21, 2008 ¶¶ 40-42.)

Fincher did not file any complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Defs. 56.1 Stmt. ¶ 95.)

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255.

### II. Title VII Claims

The presentation of a Title VII claim to the EEOC is a precondition to bringing a Title VII action. Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000); 42 U.S.C. § 2000e-5(e). Because Fincher failed to file an EEOC charge, DTCC's motion for summary judgment on the Title VII discrimination, retaliation, and hostile work place claims is granted.

III. Section 1981 Claims

    A. Discriminatory Training Claim

        To establish a prima facie claim of discrimination, a plaintiff must show inter alia that she suffered an adverse employment action and that the circumstances of the adverse action raise an inference of discrimination. McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); Choudhury v. Polytechnic Inst. of N. Y., 735 F.2d 38, 44 (2d Cir. 1984). The plaintiff's prima facie burden is de minimis. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 316 (2d Cir. 1999). Nonetheless, "the plaintiff cannot meet this burden through reliance on unsupported assertions." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). "[S]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000). A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment Gonzales v. Beth Israel Med. Ctr., 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003).

        Even assuming, as Fincher alleges, that the unequal access to training, the 2005 Performance Appraisal, and the failure to upgrade her or give her a salary increase or bonus constitute adverse employment actions, Fincher fails to establish that the circumstances surrounding those actions give rise to an inference of discrimination.

    1. Training

        "A plaintiff alleging unequal access to training must demonstrate that the employer offered training to other employees and that plaintiff was denied that training under circumstances that give rise to an inference of discrimination." Lee v. Healthfirst, Inc., No. 04

Civ. 8787 (THK), 2007 WL 634445, at *13 (S.D.N.Y. Mar. 1, 2007.)  A claim of discriminatory

disparate treatment "[w]ithout any frame of reference for comparison, let alone any

corroborating or verifying evidence of disparately treated incidents, [is] an amorphous claim

[which] cannot stand on the basis of mere conclusory allegations that plaintiffs were treated

differently."  Griffin, 103 F. Supp. 2d at 309.

      Although Fincher testified that three white co-workers received training which

was not offered to her, she could not specify what training they received, nor could she specify

any training that she asked for and DTCC decline to provide to her.  Similarly, while Fincher

asserts that one white co-worker was given a more experienced manager to assist her with her

first audit and Fincher was given a consultant, she provides no details regarding the nature of her

co-worker's audit, its complexity, or duration.  Fincher's conclusory statements, devoid of

specifics, are insufficient to give rise to an inference of discrimination.  See Griffin, 103 F. Supp.

2d at 308.  Moreover, any difference in training resulting from assistance that is specific to an

employee's assignment does not give rise to an inference of discrimination.  See McLee v.

Chrysler Corp., 926 F. Supp. 443, 444 (S.D.N.Y. 1996) (where company provides "on-the-job

training tailored to the particulars of the job," an "allegation that the training given certain

Caucasian [employees] was different from his own does not by itself give rise to any inference of

discrimination").

      Fincher's testimony that Hudson believed she and another co-worker had been

discriminated against is not supported by anything other than Fincher's ipse dixit.  Hudson

denies making such statements and Fincher has not offered any direct or circumstantial evidence

to corroborate her testimony.  This is simply insufficient to give rise to an inference of

discrimination.  See Gonzales, 262 F. Supp. 2d at 353.

2. Upgrade, Salary Increase, and Bonus

There is also no evidence giving rise to an inference of discrimination with regard

to DTCC's failure to give Fincher a raise, bonus or upgrade.  DTCC promoted African American

employees who received positive performance appraisals and gave them raises and bonuses,

while decline to promote or give raises or bonuses to white employees who received negative

performance appraisals.  Because Fincher cannot rebut the evidence that DTCC applied its

performance policy uniformly, Fincher fails to raise an inference of discrimination.  See Lee,

2007 WL 634445, at *12-14 (granting summary judgment where defendant granted and denied

salary increases and bonuses consistent with policy guidelines).

3. 2005 Performance Appraisal

Fincher has offered no evidence that would lead to an inference of discrimination

with regard to her 2005 Performance Appraisal.

Accordingly, Fincher fails to establish a prima facie case of discrimination and

DTCC's motion for summary judgment on the discrimination claim is granted.

B.  Retaliation

To establish a prima facie case of retaliation a plaintiff must show inter alia that

the defendant subjected plaintiff to an adverse employment action.  Taitt v. Chem. Bank, 849

F.2d 775, 777 (2d Cir. 1988).  A plaintiff must show that the employment action was materially

adverse, i.e., that it would have "dissuaded a reasonable worker from making or supporting a

charge of discrimination."  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53,

8

68 (2006) (internal quotation marks and citations omitted).  Examples of adverse employment

actions include "termination of employment, a demotion evidenced by a decrease in wage or

salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation."  Fairbrother v. Morrison,

412 F.3d 39, 56 (2d Cir. 2005).  "[N]egative evaluations alone, without any accompanying

adverse consequences, such as a demotion . . . do not constitute adverse employment actions."

Gordon v. N.Y. City Bd. of Educ., No. 01 Civ. 9265 (SAS), 2003 WL 169800, at *6 (S.D.N.Y.

Jan. 23, 2003).

There is no evidence that Fincher suffered an adverse employment action after she

spoke with Smith at the end of March 2006.  The alleged disparate training, negative

performance evaluations, and denial of a salary increase and bonus occurred before Fincher

spoke with Smith in March 2006.  See Das v. Our Lady of Mercy Med. Ctr., No. 00 Civ. 2574

(JSM), 2002 WL 826877, at *12 (S.D.N.Y. April 30, 2002) (actions preceding the protected

activity are insufficient to show an adverse employment action).  The failure to investigate

Fincher's complaint to Smith is not an adverse employment action.  See Hayes v. Kerik, 414 F.

Supp. 2d 193, 203 (E.D.N.Y. 2006).

Accordingly, DTCC's motion for summary judgment on the retaliation claim is

granted.

C.  Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must show that "the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

9

working environment." <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993) (citation omitted);

<u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 69 (2d Cir. 2000).

There is no evidence that Fincher was subjected to ridicule, intimidation, or

insults.  In addition, any failure to investigate Fincher's complaint of discrimination does not

give rise to a hostile work environment claim.  <u>See Chan v. N.Y. City Transit Auth.</u>, No. 03-

6239, 2004 WL 1812818, at *4 (E.D.N.Y. Jul. 19, 2004).  Accordingly, DTCC's motion for

summary judgment on the hostile work environment claim is granted.

D.  <u>Constructive Discharge</u>

A plaintiff claiming constructive discharge must show "that the employer

deliberately created working conditions that were so difficult or unpleasant that a reasonable

person in the employee's shoes would have felt compelled to resign."  <u>Stetson v. NYNEX Serv.</u>

<u>Co.</u>, 995 F.2d 355, 361 (2d Cir. 1993) (citations omitted); <u>Chenette v. Kenneth Cole Prods., Inc.</u>,

No. 05 Civ. 4849 (DLC), 2008 WL 3176088, at *8 (S.D.N.Y. Aug. 6, 2008).  Because the Court

has dismissed the hostile work environment claim, DTCC's motion for summary judgment on

the constructive discharge claim is also granted.

IV.  <u>New York State and City Claims</u>

Since claims under New York State and City Human Rights law are analyzed

under the same standards as § 1981, <u>see</u> <u>Conway v. Microsoft Corp.</u>, 414 F. Supp. 2d 450, 458

(S.D.N.Y. 2006), DTCC's motion for summary judgment on the New York State and City law

claims is granted.

10

CONCLUSION

For the foregoing reasons, DTCC's motion for summary judgment is granted.

The Clerk of Court is directed to mark this case closed.

Dated: September 17, 2008
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Stephen Theodore Mitchell, Esq.
The Law Firm of Stephen T. Mitchell
67 Wall Street
Suite 2211
New York, NY 10005
*Counsel for Plaintiff*

Fredric Charles Leffler, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
*Counsel for Defendant*

11